IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEANNA K. HORN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CIV-06-554-L |
| | ) |
| MICHAEL J. ASTRUE,[1] | ) |
| Commissioner, Social Security | ) |
| Administration, | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Deanna K. Horn ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits under the Social Security Act.[2] This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

**Administrative Proceedings**

Plaintiff initiated these proceedings by filing her application seeking disability insurance benefits in September, 2002 [Tr. 54 - 56]. She alleged that she was suffering from a misaligned knee replacement and that limitations from her inability to walk without the assistance of a cane became disabling as of February 1, 2002 [Tr. 71].

---

[1] Effective February 1, 2007, Michael J. Astrue became Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Jo Anne B. Barnhart as Defendant in this action.

[2] The ALJ's decision and the record's List of Exhibits indicates that Plaintiff also sought supplemental security income payments [Tr. 4 and 19]. Nonetheless, that documentation is not included in the record.

Plaintiff's claims were denied initially and upon reconsideration [Tr. 29 - 31 and 34 - 35]; at Plaintiff's request an Administrative Law Judge ("ALJ") conducted a July, 2004, hearing where Plaintiff, who was represented by counsel, and a vocational expert testified [Tr. 36 and 154 - 190].  In his July, 2004, decision the ALJ found that Plaintiff retained the capacity to perform past relevant work and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 19 - 23].  The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 5 - 7], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial.  "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion."  *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. § 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Where Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner,* 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984). In this case, the ALJ determined that Plaintiff retained the capacity to perform past relevant work, terminating the sequential inquiry at the fourth step.

**Plaintiff's Claims of Error**

In related points of error with regard to whether an impairment suffered by Plaintiff met listing-level[3] severity at the third step of the sequential process, Plaintiff maintains, first, that "[t]he ALJ's consideration of whether Plaintiff met the criteria of a musculoskeletal listing is conclusory and beyond judicial review" and, second, that "[t]he ALJ's failure to perform a Step Three analysis is not harmless because a reasonable

---

[3]*See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. "The Listing of Impairments describes, for each of the major body systems, impairments that are considered severe enough to prevent an adult from doing any gainful activity." 20 C.F.R. § 404.1525 (a).

factfinder could have found on this record that Plaintiff was not able to ambulate effectively." [Doc. No. 16, p. 4]. Next, Plaintiff alleges that the ALJ "improperly disregarded Plaintiff's serious leg impairment as not severe at Step Two as he failed to properly apply the duration provisions of the Social Security Act, he failed to properly develop the record regarding the severity and prognosis associated with the leg injury, and he substituted his own lay opinion for medical evidence." *Id.* at 8. Finally, in a point of error the undersigned will address in conjunction with the step three claims, Plaintiff asserts that "[t]he ALJ's credibility determination is legally insufficient as the ALJ failed to link his determination to substantial evidence." *Id.* at 10.

**Listed Impairment 1.02 and Plaintiff's Credibility**

At the time of the administrative hearing in 2004, Plaintiff was forty-four years old, with a high school equivalency degree, and with work experience as a bartender, a cashier, a fast food worker, a stock clerk, and a camera assembler [Tr. 20, 157 and 158]. Documentary evidence in the record and a transcript of the administrative hearing reveals that in 1999, Plaintiff underwent a total left knee replacement as a result of progressive degenerative joint disease [Tr. 21 and 105 - 109]. The procedure was successful, allowing her to continue working for approximately three more years, until she again began to experience problems with her knee and resulting difficulties with standing, a limitation she testified ultimately caused her to leave her work in the meat department of an IGA grocery store as of February 1, 2002 [Tr. 160 - 163]. According to Plaintiff's administrative filings, this position as a butcher's assistant – packaging and pricing meat products – required, in a four hour day, four hours of walking and standing

with no sitting [Tr. 86].

The record further shows that Plaintiff sought treatment for her knee pain at the OU Medical Center in May, 2002 [Tr. 147]; radiography revealed some loosening around the tibial component of the knee [Tr. 146]. At a subsequent examination, Plaintiff reported increasing pain, stating that her activity had become limited to the point that she was no longer able to work; the ultimate assessment was "[a]septic loosening of the tibial component of the left total knee arthroplasty [Tr. 142]. On March 17, 2003, Plaintiff's attending physician, John F. Tomkins, M.D., wrote the following by hand on an OU Medical Center prescription form:

> Ms. Horn underwent left total knee arthroplasty in June 1999. She subsequently developed aseptic loosening of the tibial component which can cause significant pain and difficulty ambulating. We are planning a revision for surgery within the next few months. She will be temporarily totally disabled until she has recovered from surgery unless she can do sedentary work.

[Tr. 135]. Plaintiff testified that Dr. Tompkins first recommended the surgery in May, 2002, but that she had not had the surgery because, "I can't work[;] I can't afford it[;] I have no insurance." [Tr. 164].

In January, 2003, after having filed her claims for benefits, Plaintiff underwent a consultative examination by Juan A. Maldonado, M.D. [Tr. 113 - 117]. Dr. Maldonado's report shows that Plaintiff complained of constant left knee pain when standing, stating that the pain was less bothersome when she was sitting [Tr. 113]. She also complained of decreased muscle mass in her left leg. *Id.* As noted by the ALJ, Dr. Maldonado reported on physical examination that Plaintiff's left knee was markedly enlarged with increased heat and swelling and with a decreased range of motion [Tr. 21 and 114]. Dr.

Maldonado further reported a slight limping gait on the left leg but stated that Plaintiff's gait was safe, stable and of normal velocity. *Id.* He found no evidence of muscle atrophy; the diameter of Plaintiff's right thigh was 49.5 centimeters while the left was 51.5 centimeters and the diameter of her right calf was 33 centimeters and the left calf was 35 centimeters [Tr. 114]. An examination of Plaintiff's back revealed pain to palpation in the lumbar region and an area of knot-like hardening suggestive of a muscle spasm. *Id.* Plaintiff was reported able to perform heel and toe walking without major difficulties. *Id.* Dr. Maldonado diagnosed hypertension and degenerative joint disease of the knees and shoulders [Tr. 115].

Based upon his review of the medical evidence, the ALJ determined that Plaintiff was severely impaired by degenerative joint disease with a history of left knee replacement and hypertension [Tr. 21]. He further determined after "particular attention was given the musculoskeletal, neurological, and cardiovascular listings" that Plaintiff's impairments did not meet or equal the severity required by the criteria of any listed impairment. *Id.*

The ALJ then proceeded to determine whether Plaintiff retained the residual functional capacity[4] to perform any of her past relevant work, stating that "[i]n making this assessment, the undersigned must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR §§ 404.1529 and 416.929, and Social Security Ruling 96-7p." *Id.*

---

[4]Residual functional capacity ("RFC") "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545 (a) (1).

In this connection, the ALJ noted Plaintiff's testimony concerning the twelve (12) hours of college credit she had earned at Southwestern Oklahoma State University in Weatherford since the date of her last employment on February 1, 2002 [Tr. 21]. Plaintiff testified that she completed her twelve (12) hours – possibly more – over the course of two (2) semesters – fall of 2003 and spring of 2004 – by taking two (2) classes, each lasting approximately forty-five (45) minutes, twice a week [Tr. 159 - 160]. When asked if she was able to drive herself to school, he testified that, "No, I had somebody drive me and drop me off and come back and pick me up." [Tr. 171]. She further explained that the same was true with any of her outside activities - "I don't drive." *Id.* A statement made by Plaintiff in her administrative filings offers a more detailed explanation of her need for a driver. In responding "yes" to questions about her social activities and whether "you go out and visit friends or relatives," Plaintiff stated that she did so three (3) to four (4) times a week and that "someone always has to take me[;] I don't have a car." [Tr. 92]. As to whether she was "able to take your books in by yourself" after arriving at school, Plaintiff testified that, " I had a backpack so it kind of helped balance me up kind of sort of, . . ." [Tr. 171].

The ALJ continued by noting Plaintiff's testimony that she experienced significant pain in her left knee, that she could walk less than a block without her cane, and that she could stand without a cane less than five minutes before experiencing severe pain [Tr. 21 - 22]. The ALJ concluded that Plaintiff's "subjective complaints have not been entirely credible in light of the medical evidence of record." [Tr. 22]. He further found that Dr. Tompkins, while stating that Plaintiff was temporarily disabled pending knee surgery,

had specifically added "unless she can do sedentary work." [Tr. 22 and 135]. The ALJ also found that Plaintiff's activities of daily living – attending classes on a part time basis; taking care of personal needs; preparing meals; performing household chores; shopping; reading; watching television; sewing; painting; and, visiting with friends and relatives – were not inconsistent with the ability to perform at least sedentary work. [Tr. 22].

The ALJ found that Plaintiff retained the capacity for sedentary work, that is, work that involves lifting and carrying no more than ten (10) pounds at a time, standing and walking occasionally and sitting the remainder of the time.[5] *Id.* With respect to the question of what jobs Plaintiff could perform with this RFC, the vocational expert testified during the administrative hearing that Plaintiff's past work as a camera assembler, as described by Plaintiff, was performed at the sedentary level of exertion [Tr. 22 and 178]. Through a series of hypothetical questions posed to the vocational expert by both the ALJ and Plaintiff's counsel, it was established that the camera assembler position was suitable even if the hypothetical claimant was unable to lift more than five (5) pounds, was unable to stand longer than five (5) minutes without sitting, was unable to walk more than thirty (30) to forty (40) feet, and was unable to stand without using a cane for balance [Tr. 178 - 188]. The ALJ stated in his decision that he agreed with the opinion of the vocational expert and found, "[o]n the basis of the vocational testimony, the medical evidence, and the record as a whole," that Plaintiff was capable of performing her past relevant work as a camera assembler and, consequently, was not disabled within the meaning of the Social Security Act. [Tr. 22].

---

[5]This RFC assessment is consistent with that made by a state agency physician following his review of the medical evidence [Tr. 119- 125].

On appeal from the ALJ's decision, Plaintiff contends that her knee impairment is of sufficient severity to satisfy the requirements of Section 1.02, the listing for major dysfunction of a joint due to any cause. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, § 1.02. The regulation – revised effective February, 2002 – provides that the impairment is

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>     A. Involvement of one of the major peripheral weight-bearing joint (*i.e.,* hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, § 1.02. § 1.00B2b, in turn, provides

> (1) *Definition.* Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e,* an impairment(s) that interferes were seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .
> (2) *To ambulate effectively,* individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently around one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, § 100B2b.

When the Social Security Administration revised the criteria used to evaluate a musculoskeletal impairment, including § 1.02, the agency made clear that "the final rules stress a finding of disability under the musculoskeletal listings on the basis of how the individual is functioning." 66 Fed. Reg. 58010, at 58012. Moreover, in responding to comments made with regard to the functional aspects of the proposed new rules, the agency confirmed that "[t]he proposed and final listings describe a level of impairment severity that represents the inability to perform any gainful activity." *Id.* at 58023.

Following his review of the medical evidence, the ALJ concluded that while Plaintiff was severely impaired by the aseptic loosening of the tibial component of her left knee, she was able to walk, albeit with a slight limp [Tr. 21]. This conclusion is supported by the records of the consultative examining physician who noted the slight limping gait but otherwise concluded that Plaintiff's gait was safe, stable and of normal velocity [Tr. 114]. The ALJ found that Plaintiff retained the ability to perform gainful activity in the form of sedentary work [Tr. 22]. Plaintiff, on the other hand, maintains that the facts "support a conclusion that [Plaintiff's] musculoskeletal impairment so limits her ability to ambulate that it reaches listing severity." [Doc. No. 16, p. 5]. In support of this position, she argues that "[h]er treating physician stated that the knee impairment caused [Plaintiff] to experience 'significant pain and difficulty ambulating.'" *Id.* at 6. Dr. Tompkins, however, while clearly stating that "aseptic loosening of the tibial component *can* cause significant pain and difficulty ambulating," [Tr. 135, emphasis added], did not proffer his medical opinion that Plaintiff was unable to ambulate effectively as that term is defined or explained by the listing and, in fact, stated that

10

Plaintiff could still perform gainful employment. *Id.*

Plaintiff also relies on her own subjective testimony "that she could not even walk a block using a cane"as evidence[6] that she was unable to ambulate within the meaning of the listing [Doc. No. 16, p. 7]. The ALJ, however, found Plaintiff's testimony to be less than credible, specifically noting her testimony that she could stand without a cane less than five (5) minutes before experiencing severe pain and that she could walk less than a block without her cane [Tr. 21 - 22].[7] Plaintiff maintains that "[t]he ALJ's credibility analysis, or lack of it, is directly contrary to law." [Doc. No, 16, p.10].

Specifically, Plaintiff argues that the ALJ did not link his credibility analysis to substantial evidence. *Id.* at 12. This is simply not the case. First, the ALJ stated that Plaintiff's complaints were not credible in light of the medical evidence [Tr. 22]. Once again, the medical evidence upon which the ALJ relied was the report of Dr. Maldonado, the consultative examining physician who found that Plaintiff walked with a slight limp but otherwise had a gait that was safe, stable, and of normal velocity [Tr. 22 and 114]. Next, the ALJ referenced Dr. Tompkins' statement that Plaintiff was awaiting knee surgery and could perform only sedentary work until the surgery and the requisite recovery were accomplished [Tr. 22 and 135]. Contrary to Plaintiff's argument that the ALJ improperly assumed that Dr. Tompkins' definition of "sedentary" equated with that of the Social Security Administration's regulations, the ALJ was entitled to rely on the

---

[6] In this regard, Plaintiff has not directed the court to any evidence establishing that her use of a cane was physician-directed.

[7] Plaintiff correctly points out that the ALJ inaccurately described her testimony; Plaintiff actually testified that she did not believe that she could not walk a block *with* a cane. Nonetheless, the evidence is subjective in either case.

11

physician's opinion that Plaintiff remained capable of engaging in gainful employment when gauging the credibility of Plaintiff's claim of total disability. Finally, the ALJ found that Plaintiff's activities of daily living were consistent not with total disability but rather with the ability to perform gainful employment at the sedentary exertional level [Tr. 22]. Relying on the well-recognized rule that "the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain," *Thompson v. Sullivan,* 987 F.2d 1482, 1490 (10th Cir. 1993), Plaintiff suggests that her daily activities were only of a minimal nature and did not "clearly show that claimant has the ability to work." [Doc. No. 16, p. 14]. The ALJ, however, focused on more than routine activities of day-to-day living undertaken by Plaintiff in her home, specifically pointing to the fact that Plaintiff left her home to visit with friends and relatives and to shop and, of most significance, that she attended university classes on a part-time basis [Tr. 22]. The ALJ properly considered Plaintiff's ability to regularly attend classes – earning twelve (12) credit hours over the course of two (2) semesters – as evidence that Plaintiff does not suffer, as claimed, from totally disabling limitations. *See Gay v. Sullivan,* 986 F.2d 1336, 1339 (10th Cir. 1993).

The ALJ's assessment of Plaintiff's credibility will "not be upset if supported by substantial evidence." *White v. Massanari,* 271 F.3d 1256, 1261 (10th Cir. 2001). "'Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence.'" *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Secretary of Health & Human Services,* 898 F.2d 774, 777 (10th Cir. 1990)). The ultimate question on review is not

whether the reviewing court agrees with the ALJ's factual findings or whether another fact-finder might have come to a different conclusion. A reviewing court may "neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]." *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 800 (10th Cir. 1991). The ultimate question, instead, is whether the ALJ's finding is supported by substantial evidence in the record as a whole and the answer here is clearly affirmative.

Plaintiff also maintains that the ALJ erred as a matter of law by failing to complete a proper step three analysis. Relying on the decision in *Clifton v. Chater,* 79 F.3d 1007 (10th Cir. 1996), Plaintiff urges that ALJ failed to discuss the evidence and explain why Plaintiff was not disabled at step three of the sequential process. The ALJ' s decision, however, referenced Plaintiff's knee impairment with specificity – aseptic loosening of the tibial component of the left knee – and then reflected his finding, based on the medical evidence, that Plaintiff remained able to walk with a only a slight limp [Tr. 21]. In this regard, Plaintiff has not pointed to any *medical opinion* that the ALJ failed to consider which established that her knee impairment rendered her unable to ambulate effectively as that term is defined by the listings.  As to Plaintiff's own subjective complaints, the regulations contemplate that in certain cases a claimant such as Plaintiff, despite having a severe impairment, will not have ongoing, continuous medical care.[8] *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, § 1.00H.  The regulations provide that, "In such cases, evaluation will be made on the basis of the current objective medical

---

[8]Plaintiff was seen at the OU Medical Center on May 13, 2002, July 8, 2002, August 5, 2002, and August 19, 2002 [Tr. 136 - 148].  It is not apparent from Dr. Tomkins' note of March 17, 2003, whether Plaintiff was examined on that occasion [Tr. 135].

13

evidence and other available evidence, taking into consideration the individual's medical history, symptoms, and medical source opinions." *Id.* at § 1.00H3. Although he did not do so as part of his discussion at step three, the ALJ assessed the credibility of Plaintiff's stated symptoms at step four – an assessment challenged by Plaintiff and upheld by the undersigned – and found that her subjective complaints were not entirely credible [Tr. 22].

Any error committed by the ALJ at step three of the sequential process was harmless. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005) ("[W]here an ALJ provides detailed findings . . . that confirm rejection of the listings in a manner readily reviewable, requiring reversal would extend *Clifton* beyond its own rationale[;] [n]either *Clifton's* letter nor spirit require a remand for a more thorough discussion of the listings when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review."). The ALJ's determination at step three was "readily reviewable" and is well-supported by the record. *Id.*

**Plaintiff's Broken Ankle**

Medical evidence of record establishes that Plaintiff presented to the McBride Clinic on May 11, 2004 – two (2) months prior to her administrative hearing – stating that she had recently rolled her ankle and had sustained an open fracture; she received treatment after the incident at an emergency room where the wound was closed and a splint applied. [Tr. 153]. The McBride physician stated that, "X-rays today demonstrate a long spiral fracture of the fibula, with some sagging of the talus posteriorly. The position of the mortise is fairly acceptable. There is no damage to the medial malleolus."

*Id.*  The physician further stated that, "My concern is the high risk of infection that might persist."  *Id.*  He postulated about the possibility of surgery but suggested that Plaintiff see Dr. Tomkins about this "because of the financial aspects."  *Id.*

The following day Plaintiff was seen in the Emergency Department of the OU Medical Center [Tr. 150 - 152].  She reported the foregoing history and rated her pain at about 4/10 [Tr. 150].  The examining physician reviewed Plaintiff's x-rays, confirming the fibula fracture and stating that he believed Plaintiff to have an associated posterior malleolar fracture.  *Id.*  The physician prescribed medication and advised Plaintiff to follow up in the Orthopedic Resident Clinic in one (1) week.  *Id.*  There is no written evidence that Plaintiff did so.

The ALJ dealt with Plaintiff's broken ankle in the following manner:

> In addition to the medical problems the claimant has had throughout the alleged period of disability, she also has a recent history of open fracture of left ankle in May 2004.  Although this is a serious injury (medical information appears in Exhibits 7F and 8F) it does not appear at this time that the claimant's ankle injury will cause vocationally relevant limitations for any period lasting or expecting to last for at least 12 continuous months.  As of the time of the latest available medical information, the claimant had been started on Tylox and Naprosyn and advised to follow up in an orthopedic resident clinic.

[Tr. 21].

Plaintiff maintains the ALJ "refused to accord severe-impairment status to [Plaintiff's] severe ankle injury because the condition had only occurred in May, 2004, only two months prior to the ALJ's decision in July 2004." [Doc. No. 16, p. 8].  Plaintiff urges that she is only required to "show that the effects from her leg injury *could be* expected to impose vocationally relevant limitations for a 12 month period" and that

"[s]ubstantial evidence does not support a conclusion that [Plaintiff's] serious leg injury could not be expected to cause vocationally relevant limitations for a 12-month period." *Id.* at 8 - 9. Plaintiff suggests that the ALJ erred by failing to obtain "a consultative examination or other medical opinion on the matter before he summarily disregarded [Plaintiff's] leg impairment as not severe." *Id.* at 9. In addition, Plaintiff maintains that the ALJ improperly "substituted his own supposition for medical evidence regarding [Plaintiff's] prognosis." *Id.*

Here, the ALJ was confronted with an acute open ankle fracture – as compared to a chronic, non-reversible condition – that occurred two (2) months prior to the administrative hearing. The medical evidence of record indicated that the laceration had been closed and the ankle had been splinted [Tr. 150 - 153]. There was no evidence that Plaintiff sought additional treatment for the ankle although she had been referred to the OU Orthopedic Resident Clinic. The ALJ specifically inquired of Plaintiff's counsel at the administrative hearing about the "need to hold the record open for any reason that you know of." [Tr. 157]. Plaintiff's counsel responded that he did not anticipate a need for so doing. *Id.* Thus, the ALJ concluded that "it does not appear *at this time* that the claimant's ankle injury will cause vocationally relevant limitations for any period lasting or expected to last for at least 12 continuous months." [Tr. 21, emphasis added]. Such conclusion is supported by the only evidence submitted to the ALJ. There was no medical evidence suggesting that Plaintiff's splinted ankle had not adequately healed; i.e., that the infection feared by the McBride physician ever manifested or the surgery he thought might be necessary was ever recommended. As to the ALJ's duty to further

develop the record on this point – despite no request to do so having been made by Plaintiff's counsel – the Tenth Circuit has instructed:

> The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. *Bowen v. Yuckert,* 482 U.S. 137, 146, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Dep't of Health & Human Servs.,* 13 F.3d 359, 360 - 61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater,* 73 F.3d 1019, 1022 (10th Cir. 1996). Nonetheless, in cases such as this one where the claimant was represented by counsel at the hearing before the ALJ, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored," and the ALJ "may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins v. Chater,* 113 F.3d 1162, 1167 (10th Cir. 1997).

*Branum v. Barnhart,* 385 F.3d 1268, 1271 (10th Cir. 2004). The ALJ had no duty to further develop the record or to order a consultative examination in connection with Plaintiff's broken ankle.

## **RECOMMENDATION AND NOTICE OR RIGHT TO OBJECT**

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be affirmed. The parties are advised of their right to object to this Report and Recommendation by April 19, 2007, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States,* 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 30th day of March, 2007.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE